UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LASHYEA RABDEAU,

    Plaintiff,

v.

OAKLAND COUNTY, JOHN DOE, and JANE DOE,

    Defendants.

Case No. 2:19-cv-10109
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [23]**

Plaintiff Lashyea Rabdeau attempted suicide while in pre-trial detention at the Oakland County Jail ("Jail") in January 2016. She believed that several unidentified officers exhibited deliberate indifference to her known mental health needs. So she brought this lawsuit under 42 U.S.C. § 1983 and the Fourteenth Amendment. Rabdeau alleges that John Doe knew of her suicidal intent and that Jane Doe provided a bedsheet that Rabdeau used to attempt suicide. Rabdeau also seeks to hold Oakland County accountable for their alleged failure to adequately train the officers at the Jail in suicide prevention.

In time, Defendants filed a motion for summary judgment. For the reasons that follow, the Court grants Defendants' motion.

**I.**

When, as here, defendants seek summary judgment, the Court presents the facts in the light most favorable to the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Rabdeau was arrested for larceny and brought to the Jail on January 14, 2016. (ECF No. 23-4, PageID.232; ECF No. 27-1, PageID.292.) En route to the Jail, Rabdeau made suicidal statements to the transporting officer. (ECF No. 27-1, PageID.292.) But when the officer asked why she made those statements, Rabdeau replied that she was not suicidal, just mad. (*Id.*) After being denied access to her phone, Rabdeau also said to an arresting officer, "Why don't you just shoot me?" (ECF No. 23-5, PageID.235.)

Upon arrival at the Jail, the transporting officer made a "crisis call" to the on-call caseworker, Kathleen Paternoster. (ECF No. 23-3, PageID.209; ECF No. 27-1, PageID.292.) Then, while being booked, Rabdeau apparently told another officer (Defendant John Doe), "If you put me on suicide watch, I'm going to kill myself." (ECF No. 14, PageID.59; ECF No. 23-3, PageID.222.)

Pursuant to the Jail's policies on suicide identification and prevention,[1] Paternoster met with Rabdeau immediately after her arrival in response to the "crisis call." (ECF No. 23-3, PageID.209–210.) In general, caseworkers meet with incoming inmates to complete the Client Intake and Status Assessment and to assign an appropriate watch status based on risk level. (*Id.* at PageID.212.) Caseworkers review an inmate's designated watch status periodically. (*Id.* at PageID.222.)

Paternoster has 12 years of experience as a caseworker. (*Id.* at PageID.226.) In addition to her education where she learned to identify mental illness, she also attends annual trainings regarding mental health, suicide, and medications. (*Id.*) During the initial assessment on January 14, 2016, Paternoster reviewed Rabdeau's history, background, family support, drug and alcohol

---

[1] The specific details of the policies were sealed to protect the safety of present and future inmates. (ECF No. 25)

2

abuse, and mental and physical health. (*Id*. at PageID.212–213.) Paternoster was already familiar with Rabdeau because Rabdeau had participated in a six-week "Life Employment Skills Program" run by Paternoster during a previous incarceration. (*Id.* at PageID.210.)

Paternoster wrote that Rabdeau had attempted self-harm within the last year and was currently on anti-anxiety medication. (ECF No. 23-4, PageID.233.) At no point during the assessment, however, did Paternoster consider Rabdeau to be presently depressed or suicidal. (ECF No. 23-3, PageID.215.) Rabdeau "adamantly denied" having any suicidal tendencies when asked by Paternoster. (*Id.*) Paternoster decided to place Rabdeau on Active Behavioral Watch—but not suicide watch—because of the inmate's level of anger and frustration. (*Id.* at PageID.217–218.) Unlike inmates on suicide watch, individuals on Active Behavioral Watch are allowed bedsheets and are housed with a roommate. (*Id.* at PageID.223–224.)

The following day, January 15, 2016, Paternoster again met with Rabdeau. (*Id.* at PageID.221.) During this second discussion, Paternoster felt Rabdeau was regulating her emotions well, future-oriented, and apologetic for her past behavior. (*Id.* at PageID.222.) As a result, Paternoster removed Rabdeau from Active Behavioral Watch. (*Id.*)  Rabdeau's status changed to "Past Watch Alert" (ECF No. 27-1, PageID.294), and guards routinely checked on her (*id.* at PageID.301).

Later that day during headcount, Rabdeau requested to speak with a caseworker. (*Id.* at PageID.300.) The guard on duty made a record of Rabdeau's request and indicated that Rabdeau had responded "no" when asked if she was suicidal or going to hurt herself. (*Id.* at PageID.291.) Based on her denial, the officer instructed Rabdeau to submit her request via a standard kite form. (*Id.*) Rabdeau submitted the kite on January 16 ("Can I please see my caseworker Katie"), but it was not received until three days later. (*Id.* at PageID.300.)

During her third day at the Jail, January 17, 2016, Rabdeau called her boyfriend and explained that she felt depressed and that she was "going through too much." (ECF No. 23-2, PageID.162.) Rabdeau asked a female Jail guard (Defendant Jane Doe) for a bedsheet and stressed that she had medical conditions causing her to get cold easily. (*Id.*) The guard provided the sheet. (*Id.*) Rabdeau recalls that she prayed and cried for 15 minutes before trying to commit suicide. (*Id.* at PageID.163.) During their routine rounds, guards discovered that Rabdeau had attached a sheet to a wall vent and tried to hang herself. (ECF No. 23-6, PageID.242.) Jail personnel revived Rabdeau by performing chest compressions until emergency services arrived; Rabdeau survived. (ECF No. 14, PageID.60; ECF No. 27-1, PageID.303.) A forensic report found that Rabdeau's cell contained two mattresses, four blankets, three sheets, a book, a pair of sandals, and a suicide note written by Rabdeau. (ECF No. 23-6, PageID.242.) A surveillance video that Rabdeau submitted to the Court captures the aftermath of the suicide attempt, but it does not include any footage of Jane Doe providing the sheet. (ECF No. 27-2, PageID.304.)

Almost three years later, Rabdeau filed suit against Oakland County and two unnamed officers under 42 U.S.C. § 1983 and the Fourteenth Amendment. (ECF No. 1.) Rabdeau claims officers John Doe and Jane Doe were deliberately indifferent to her known mental health needs. (ECF No. 14, PageID.62.) She also argues that Oakland County is subject to municipal liability for its failure to train officers on inmate suicide prevention. (*Id.* at PageID.64.)

Defendants filed a motion for summary judgment asking the Court to dismiss both claims. (ECF No. 23.) They argue that the claim against the individual Doe defendants should be dismissed because Rabdeau has not identified the officers and an amendment of the complaint to do so would be untimely. (*Id.* at PageID.118–119.) Absent an underlying constitutional violation by an individual defendant, Oakland County argues Rabdeau cannot proceed on her municipal liability

4

claim either. (*Id.* at PageID.120.) And regardless, Oakland County argues Rabdeau's claim cannot meet the failure to train standard. (*Id.* at PageID.123–124.)

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019) (internal citations omitted).

## III.

The Court will address each of Rabdeau's claims in turn. The Court first finds that Rabdeau cannot proceed on a § 1983 claim against unidentified individuals. The Court also finds that Rabdeau's claim for municipal liability fails because she has not demonstrated the existence of an underlying constitutional violation by an individual defendant. And besides that, Rabdeau cannot show a genuine dispute of material fact regarding the adequacy of officer training or establish that Oakland County was deliberately indifferent.

### A.

Rabdeau brings claims of deliberate indifference against John Doe and Jane Doe under § 1983. "Section 1983 provides a federal cause of action against government officials who, while acting under color of state law, 'deprived the claimant of rights, privileges or immunities secured by the Constitution or laws of the United States.'" *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). Rabdeau alleges

the individual officers violated her rights under the Due Process Clause of the Fourteenth Amendment by exhibiting deliberate indifference to her known mental health needs. However, Rabdeau's claim fails because she has not identified John Doe or Jane Doe.

A civil action against a Doe defendant cannot commence until he or she has been identified and served. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (citing *Bufalino v. Mich. Bell Tel. Co.*, 404 F.3d 1023, 1028 (6th Cir. 1968)). Thus, until Rabdeau amends her complaint to identify John Doe and Jane Doe, the allegations against them are unactionable. *See, e.g.*, *Wheeler v. Billingslea*, No. 18-CV-10346, 2019 WL 2524081, at *4 (E.D. Mich. June 19, 2019).

But it is now too late for Rabdeau to amend her complaint to identify the Does. In Michigan, the statute of limitations for § 1983 claims is three years. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 430 (6th Cir. 2016). The limitations period begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of her action." *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010) (quoting *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)). It continues to run against a specific person until he or she is identified as a defendant in a timely-filed complaint and served. *See Cox*, 75 F.3d at 240 (citing *Bufalino*, 404 F.2d at 1028). Here, because Rabdeau never commenced her claim against the Does, the statute of limitations was never tolled with respect to John Doe or Jane Doe. *See Bufalino*, 404 F.2d at 1028 ("The statute of limitations is not tolled in the absence of service of process or otherwise acquiring of jurisdiction."). And because Rabdeau's attempted suicide and injury occurred more than three years ago, the statute of limitations now bars amending her complaint to identify the Doe Defendants.

Additionally, Rabdeau cannot find refuge in Federal Rule of Civil Procedure 15(c)(1)(C). When the applicable statute of limitations has expired, replacement of a Doe defendant with a

6

previously unknown party must comply with Rule 15(c)(1)(C). *See Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012) (citing *Cox*, 75 F.3d at 240). This rule allows such a replacement to relate back to the filing date of the original complaint if there was "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). The Sixth Circuit has held that an "absence of knowledge" does not satisfy the mistake requirement. *See, e.g.*, *Wiggins v. Kimberly–Clark Corp.*, 641 F. App'x 545, 549 (6th Cir. 2016); *Brown v. Cuyahoga Cty.*, 517 F. App'x 431, 433–34 (6th Cir. 2013); *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008). Rabdeau did not make a mistake. Rather, she simply did not know which individual officers to sue. Thus, any amendment of the complaint to identify the Does would not relate back to the date of the original filing.

Rabdeau argues that she was unable to identify Jane Doe because the video surveillance provided by Oakland County was deliberately edited to omit footage of Jane Doe supplying the sheet. (ECF No. 27, PageID.279.) But Oakland County avers that the video obtained was produced via a Freedom of Information Act request prior to litigation, not through discovery. (ECF No. 28, PageID.312.) Oakland County also advises that Rabdeau sent discovery requests more than three-and-a-half years after the suicide attempt and requested all footage from January 14 through January 17, 2016. After Oakland County objected to the request as being overbroad, Rabdeau took no further action. (*Id.*) She filed no motions to compel. And it doesn't appear that she served any interrogatories or asked questions at any depositions geared toward identifying the Doe Defendants. But to toll the statute of limitations for fraudulent concealment a plaintiff must show that she "diligently sought to ascertain" the defendant's identity. *Wiggins*, 641 F.App'x at 549. Despite having no shortage of time or discovery tools at her disposal, Rabdeau has not shown that she actively attempted to identify Jane (or John) Doe. Rather, she makes a conclusory allegation unsupported by the record that the video was edited.

7

In short, Rabdeau cannot proceed against a Doe defendant until a specific named person is substituted. That has not been done and it is now too late for Rabdeau to make the substitution, so her claims against John Doe and Jane Doe must be dismissed.[2]

### B.

Rabdeau also brings a § 1983 municipal liability claim against Oakland County for failing to adequately train Jail officers on suicide prevention. "A municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). "Instead, a plaintiff must 'demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (internal citations omitted) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)). "A plaintiff does this by showing that the municipality had a 'policy or custom' that caused the violation of [her] rights." *Id.* (quoting *Monell*, 436 U.S. at 694). A policy of inadequate training or supervision is one way to demonstrate municipal liability. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

### 1.

The Sixth Circuit recently noted that it "has 'continuously held that under § 1983, a county can only be held liable if there is a showing of an underlying constitutional violation by the county's officials.'" *Andrews v. Wayne Cty.*, 957 F.3d 714, 725 (6th Cir. 2020) (quoting *Burkey v. Hunter*, 790 F. App'x 40, 41 (6th Cir. 2020)).

---

[2] The undisputed record also makes clear that caseworker Paternoster never put Rabdeau on suicide watch. And she even removed Rabdeau from Active Behavioral Watch. Thus, irrespective of the statute of limitations problem, it is unclear what the individual defendants did wrong, let alone how it would rise to the level of a constitutional violation.

However, it is unclear whether the Sixth Circuit has entirely foreclosed the possibility to proceed on a § 1983 claim for municipal liability without an individual violation. A few months after *Andrews*, another panel of the Sixth Circuit explicitly stated, "It is an open question in this circuit 'whether a municipality's liability under § 1983 is predicated on first finding that an individual officer or employee is also liable.'" *Nichols v. Wayne Cty.*, No. 19-1056, 2020 WL 4784751, at *3 n.4 (6th Cir. Aug. 18, 2020) (quoting *Rayfield v. City of Grand Rapids*, 768 F. App'x 495, 511 n.12 (6th Cir. 2019)).

Thus, it is possible the Sixth Circuit has left open a narrow path to municipal liability even when there is no finding of an underlying individual violation. *See, e.g.*, *North v. Cuyahoga Cty.*, 754 F. App'x 380, 390 (6th Cir. 2018) (stating that in a subset of § 1983 cases, a finding that no individual defendant committed a constitutional violation does not necessarily relieve the municipality from liability and "the type of claim [plaintiff] advances—one premised on a failure to act rather than affirmative wrongdoing—might fit within this analysis"); *Epps v. Lauderdale Cty.*, 45 F. App'x 332, 334 (6th Cir. 2002) (Cole, J. concurring) ("[A] finding that the individual government actor has not committed a constitutional violation does not require a finding that . . . the municipality is not responsible for that constitutional harm.").

The Court does not need to resolve this tension. Rabdeau cannot make out a claim for municipal liability under a failure-to-train theory in any event.

**2.**

In order to show that a municipality is liable under a failure-to-train theory, a plaintiff must establish that (1) the training was inadequate for the tasks the officials must perform; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *See Jackson*, 925 F.3d at 834; *Ellis ex. rel.*

*Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992).

Rabdeau alleges that officers are insufficiently trained to implement the Jail's suicide identification and prevention policies, but she provides no evidence that would indicate either a deficiency or a total absence of training. Instead, Rabdeau relies on the lack of evidence produced by Oakland County. But that has things backwards. *Hubble v. Cty. of Macomb*, No 2:16-CV-13504, 2019 WL 1778862, at *25 (E.D. Mich. Apr. 23, 2019) (providing that it is "not incumbent on the County to prove that their policies and procedures and training were adequate—it is Plaintiff's burden to demonstrate that they are *inadequate*"); *see also Harvey v. Campbell Cty.*, 453 F. App'x 557, 565 (6th Cir. 2011) (explaining that when a plaintiff puts forth no evidence of a training deficiency, the court's "duty to view the facts in the light most favorable to plaintiffs does not require or permit [it] to accept as true mere allegations that are not supported by factual evidence"). Rabdeau's failure to present any proof of inadequate training alone is enough to doom her claim against Oakland County.

And even assuming that the Jail's officer training is inadequate, Rabdeau has still not demonstrated that the inadequacy resulted from Oakland County's deliberate indifference. A plaintiff may meet the deliberate indifference standard in one of two ways: by showing "prior instances of unconstitutional conduct demonstrating that the [county] had notice that the training was deficient and likely to cause injury but ignored it" or with "evidence of a single violation of federal rights, accompanied by a showing that the [county] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Jackson*, 925 F.3d at 835 (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012)). Rabdeau has

provided no evidence of prior suicide attempts by inmates at the Jail. And she cannot succeed under the single-violation approach to showing deliberate indifference either.

Demonstrating deliberate indifference through a single violation "is available 'in a narrow range of circumstances' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'" *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 739 (6th Cir. 2015) (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). *Shadrick* is an example of a "highly predictable" consequence of a failure to train. There, an inmate died of complications from an untreated infection. *Shadrick*, 805 F.3d at 729. The Sixth Circuit noted that there was evidence that the licensed practical nurses at the jail "lack[ed] any authority to diagnose medical conditions, yet the nurses [were] routinely confronted with frequent and competing demands for medical care." *Id.* at 740. Further, it was "highly predictable that a poorly trained [licensed practical] nurse working in the jail setting utterly lack[ed] an ability to cope with constitutional situations." *Id.* at 742 (internal quotation marks omitted).

The facts of Rabdeau's claim are nothing like those of *Shadrick*. Oakland County has demonstrated the existence of suicide identification and prevention policies that officers follow under the supervision of experienced caseworkers at the Jail. The record also suggests the officers reasonably complied with these directives. For example, the transporting officer, after hearing Rabdeau's suicidal statements, placed a "crisis call" for caseworker assistance. (ECF No. 23-3, PageID.209; ECF No. 27-1, PageID.292.) And when Rabdeau asked to speak with a caseworker after being taken off Active Behavioral Watch, the officer first asked if Rabdeau was suicidal before instructing her to submit a kite form. (ECF No. 27-1, PageID.291.) Because Oakland County has equipped Jail officers with both suicide identification and prevention policies and

11

caseworker supervision, Rabdeau's attempted suicide was not a highly predictable consequence of a failure to train.

For all of these reasons, Rabdeau's failure-to-train claim fails.

## IV.

Accordingly, the Court GRANTS the Defendants' motion for summary judgment. (ECF No. 23.) Rabdeau's case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: August 26, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE